IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CCA ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 97-334C<br>(Judge Lettow) |

## DEFENDANT'S SUPPLEMENTAL POST-TRIAL BRIEF

Pursuant to the Court's December 8, 2006, order, the United States respectfully submits this supplemental post-trial brief.

## ARGUMENT

Plaintiff, CCA Associates ("CCA"), has submitted a supplemental post-trial brief arguing that it would have been futile to apply to prepay under the Preservation Statutes. See Pl.'s Supp. Post-Trial Br. at 1-5. CCA is mistaken. The statutory standards conferred upon HUD discretion to evaluate plans of action seeking prepayment. The manner in which HUD would have exercised its discretion is unknown and it is not the Court's role to predict what HUD would have decided if an application to prepay had in fact been submitted. See Def.'s Post-Trial Br. at 19-21. CCA's taking claim is, therefore, not ripe.

CCA argues that LIHPRHA "bars prepayment if a rent increase following prepayment and conversion to market rents would, when combined with rent increases authorized by HUD prior to prepayment, result in a total rent increase in excess of 10% in any year." Br. at 1 (emphasis added). CCA's argument disregards the statute's plain language. Only rent increases caused by "implementation of the plan of action" are considered. 12 U.S.C. § 4108. Thus, rent

increases previously authorized by HUD pursuant to the owner's regulatory agreement would not be considered in evaluating a plan of action to prepay.

CCA next asserts that even after getting the allowable increase in HUD rents, prepayment and conversion would have increased the rent for one bedroom apartments by more than 10 percent. Br. at 3. CCA's assertion is mathematically unsound.[1] Even if Dr. Ragas's inflated "market rent" figures were used, the increase in rents for CCA's for one bedroom units would be only 9.5 percent. Def.'s Post-Trial Br. at 28.

CCA also argues that "unequivocal testimony" establishes that a plan of action to prepay would have been denied by HUD because CCA's current tenants would have had to pay over 30 percent of their adjusted income in rent. Br. at 4. CCA offered no evidence about the financial status of its tenants in 1991. And the supposedly "unequivocal testimony" by Mr. Alexander did not address the effect of a well-crafted plan of action, did not concern any particular point in time, was not limited to moderate income housing projects, was not limited to projects that declined project-based Section 8 assistance, and did not focus upon Chateau Cleary itself. Mr. Alexander's vague statement, i.e., that it was "unlikely" that section 221(d)(3) tenants could afford "conventional housing," is simply insufficient to establish futility.

Lastly, CCA suggests that the rents approved by HUD on December 1, 1984 were based upon projected costs for 1985. Br. at 4. The record does not support CCA's claim. CCA proffered no documentary evidence indicating that its 1984 rent increase request projected future costs. Moreover, Mr. Norman flatly stated that the 1984 rent increase was based upon CCA's

---

[1] By subtracting 26 percent from 39 percent to get a supposed 13 percent increase, see Br. at 3, CCA implicitly uses the rent before the allowable HUD rent increase as its denominator. This overstates the percent increase.

1983 audited financial statement. Tr. 332-33 (Norman); see also Tr. 340 (Norman) ("we never could project expenses"). Seeking to undercut Mr. Norman's testimony, CCA argues that the 1984 rent increase "necessarily reflected expected future increases" in costs because operating costs from 1982 to 1983 had gone down one percent. Br. at 4-5; see also PDX33. CCA disregards the fact that prior rent increases in 1981 and 1983 had not fully kept pace with the large increase in operating costs that occurred during the early 1980s. See PDX33 (showing 34% and 26% cost increases in 1980 and 1981, respectively, but only 15% and 14% rent increases). The rent increase CCA requested in 1984, based upon its 1983 audited financial statement, Tr. 332 (Norman), simply closed the gap between operating costs and rental income that had opened during the high inflation of the early 1980's, see PDX33.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

s/ Kenneth D. Woodrow

KENNETH D. WOODROW
DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 353-0513

December 13, 2006

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 13th day of December, 2006, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL POST-TRIAL BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kenneth D. Woodrow